IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Brian Douglas Laws, | ) | C/A No. 0:13-3131-BHH-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | **ORDER AND** |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden of Lee Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Brian Douglas Laws, a self-represented state prisoner, filed this petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28

U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the

respondent's motion for summary judgment. (ECF No. 27.) Pursuant to Roseboro v. Garrison, 528

F.2d 309 (4th Cir. 1975), Laws was advised of the summary judgment and dismissal procedures and

the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No.

28.) Laws filed a response in opposition and moved to amend his petition[1] and submit evidence in

support of his proposed amended petition. (ECF Nos. 42 & 43.) The respondent filed responses to

Laws's motions in which he indicated that he did not oppose Laws's apparent abandonment of

Ground Four of his Petition, but did oppose Laws's attempt to amend Ground Three. (ECF Nos. 47

& 49.) Laws replied. (ECF Nos. 55 & 56.) Having carefully considered the parties' submissions

and the record in this case, the court concludes that the respondent's motion for summary judgment

should be granted and Laws's Petition denied. Further, as discussed below, the court concludes that

---

[1] Laws's motion to amend seeks to abandon the claim raised in Ground Four of the original petition, and to add a claim of ineffective assistance of trial counsel to Ground Three. Grounds One and Two of the original petition are simply restated in the motion to amend. (ECF No. 42.)

PJG

Laws's motion to amend the petition should be granted to the extent that he seeks to abandon the claim presented in Ground Four, and denied to the extent he seeks to add an additional claim of ineffective assistance of trial counsel to Ground Three.

## BACKGROUND

Laws was indicted in September 2005 in Pickens County for armed robbery (05-GS-39-2045). (App. at 423-24, ECF No. 26-5 at 77-78.) Laws was represented by John W. DeJong, Esquire, and on November 15-16, 2005 was tried before a jury and found guilty as charged. (App. at 341, ECF No. 26-4 at 55.) The circuit court sentenced Laws to life imprisonment without the possibility of parole.[2] (App. at 345, ECF No. 26-4 at 59.)

Laws timely appealed and was represented by Eleanor Duffy Cleary, Esquire, Assistant Appellate Defender, who filed an Anders[3] brief on Laws's behalf that presented the following question:

> Whether the trial judge erred in finding that appellant's statement was admissible where the state failed to demonstrate by a preponderance of the evidence that appellant voluntarily waived his Miranda rights?

(App. at 347-55, ECF No. 26-5 at 1-9.) Laws filed a *pro se* response to the Anders brief in which he raised the following questions:

Question A:    Was the statement used at trial obtained in violation of Miranda?

---

[2] Due to Laws's two prior convictions for armed robbery and the State's notice pursuant to S.C. Code Ann. § 17-25-45, the court sentenced Laws to life without parole.

[3] Anders v. California, 386 U.S. 738 (1967). Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. Anders, 386 U.S. at 744.



Question B:    Was there a McNabb violation in this case?

Question C:    Did the trial Court err[] in failing to suppress the in-Court identification?

Question D:    Did the trial Court err[] in failing to suppress items at trial obtained in violation of the Fourth Amendment from a vehicle search?

Question [E]:  Did the Court err[] in failing to suppress bad act evidence of prior offense?

Question F:    Did the Court err[] in failing to grant defense Counsel's requested Directed Verdict Motion?

(ECF No. 26-7 at 6.)  On September 5, 2008, the South Carolina Court of Appeals filed an order dismissing Laws's appeal.  (State v. Laws, Op. No. 08-UP-503 (S.C. Ct. App. Sept. 5, 2008); App. at 359-60, ECF No. 26-5 at 13-14.)  The remittitur was issued on September 23, 2008.  (ECF No. 26-8.)

Laws filed a *pro se* application for post-conviction relief ("PCR") on April 21, 2009 in which he raised the following claims:

(a)    Ineffective assistance of appellate couns[e]l

(b)    Ineffective assistance of defense couns[e]l

(c)    Violation of constitutional safeguards[.]

(See Laws v. State of South Carolina, 09-CP-39-798; App. at 361-66, ECF No. 26-5 at 15-20.)  The State filed a return.  (App. at 367-70, ECF No. 26-5 at 21-24.)  Laws filed a *pro se* amendment to his PCR application on July 5, 2010 in which he raised the following additional issues:

Issue A:    Appellate Counsel was ineffective for not presenting MIRANDA within a scope acceptable to established case law, and generally accepted views of legal jurisprudence.  The scope of MIRANDA that Appellate Counsel used attacks standing pre[c]edent decisions and must be viewed as insufficient by [its] very nature thereof.  The correct scope is now presented.



Issue B:      Failed Appellate and Defense Counsels were both ineffective for not bringing forth the ISSUE of the McNabb violation during either the trial phase, or the Direct Appeal.

Issue C:      Appellate Counsel was ineffective for failing to present the ISSUE of the Neil v. Biggers test failing during the trial phase, promin[ent]ly setting forth the grounds for suppression of the in-court identification.

Issue D:      Appellate Counsel was ineffective for not presenting that no Probative Value versus Prejudicial Effect analysis for trial court[']s use of prior bad act evidence to impeach the Applicant during trial was ever employed to determine the balance of legality for the use of such evidence.

Issue E:      Appellate Counsel was ineffective for failing to present the ISSUE of Hearsay to the Appellate Court on Direct Appeal.

Issue F:      Appellate Counsel was ineffective for failing to present the violation of the Applicant's Fourth Amendment right against illegal searches and seizures during the Direct Appeal.

Issue G:      Appellate Counsel was ineffective for not presenting that the trial Court was in error by denying the Applicant's trial Counsel's Directed Verdict Motion, as well as the new trial Motion.

(ECF No. 26-9 at 6.) On August 23, 2010, the PCR court held an evidentiary hearing at which Laws appeared and testified and was represented by Rodney W. Richey, Esquire. By order filed November 2, 2010, the PCR judge denied and dismissed with prejudice Laws's PCR application. (App. at 414-22, ECF No. 26-5 at 68-76.)

On appeal, Laws was represented by Wanda H. Carter, Esquire, Deputy Chief Appellate Defender, who filed a Johnson[4] petition for a writ of certiorari on Laws's behalf that presented the following question:

---

[4] Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (applying the factors in Anders v. California, 386 U.S. 738 (1967) to post-conviction appeals).



Trial counsel erred in misadvising petitioner with respect to accepting the state's plea offer in the case because it was clear that petitioner should have been advised to accept the state's plea offer in order to avoid an LWOP sentence in the case.

(ECF No. 20-5.)  On September 11, 2013, the South Carolina Court of Appeals issued an order denying Laws's petition for a writ of certiorari.  (ECF No. 26-12.)  The remittitur was issued September 27, 2013.  (ECF No. 26-13.)  This action followed.

## FEDERAL HABEAS ISSUES

Laws's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:**  Ineffective Assistance of Counsel.
**Supporting Facts:**  I was offered a plea of 10 years non-violent by solicitor Lucas Marchant on or about October 10th 2005.  My attorney John DeJong advised me not to take the plea deal.  I was subsequently served notice of the solicitor seeking a trial and Life Without Parole as the sentence.  My attorney admitted at my P.C.R. hearing in August 2010 that he did advise me not to accept the plea that was offered knowing my case was not a good trial case.

**Ground Two:**  Officers that conducted interrogation violated Miranda by not stopping questioning after 6 hours and my refusal and request for burger.
**Supporting Facts:**  The officers both admitted during that I was chained in their office for six hours while they questioned me and told me I would get food after I gave a statement and they admit to instructing me what to write in the statement.  They admit to me giving them the statement and telling them I was done and they told me I was not done and instructed me what to write so I could be finished and get food.

**Ground Three:**  Illegal identification process by officer sharing a single picture of me to victim, telling victim my name and telling victim I did crime.
**Supporting Facts:**  The officer admitted at trial that he had no description of anyone [in] particular but he called for a picture of Brian Laws to be brought to the scene of robbery and showed the picture to store clerk without any photo lineup, a single picture, and told the clerk that Brian Laws is the person that robbed his store.  Then at trial the solicitor used a car not registered or titled to me for identification.

**Ground Four:**  Illegal search and seizure process without a warrant or plain sight reasoning and use of ambiguous consent form.
**Supporting Facts:**  Officers asked me to sign papers while under the influence of drugs and the paperwork does not consent to a particular vehicle by any such means of make, model, color, year, or any defining characteristic.  The consent to search



form is objectively ambiguous and therefore unclear of intent, rendering that form unenforceable, and illegal for the process of search protocols.

(Pet., ECF No. 1.)  On September 25, 2014, Laws filed a motion to amend his Petition.  In his proposed amended petition, Laws presents the following grounds:

> **Ground One:**  Petitioner's trial counsel was ineffective by not advising petitioner of all evidence against him, and not advising petitioner of the risks involved in going to trial, during a plea negotiation where a 10 year non-violent sentence was proffered by the State's solicitor for one day only, versus going to trial and facing a possible life without parole sentence.
>
> **Ground Two:**  The confessions being allowed as evidence by the State is prejudicial to petitioner in this case from two separate views of legal reasoning and standing precedent, one view reflects Miranda's scope, and the second view reflects McNabb's scope.
>
> **Ground Three:**  The identification in court conducted by the State was the fruit of police influence so suggestive as to render 'a very substantial likelihood of irreparable misidentification', trial counsel did not render effective assistance when he failed to call any witnesses during an in-camera Stovall v. Denno hearing to pre-establish the Neil v. Biggers test would fail for the State prior to trial, and PCR counsel's assistance was rendered ineffective by him failing to question trial counsel as to why trial counsel failed to call witnesses at the pre-trial in-camera hearing to determine admissibility of in-court identification.

(ECF No. 42.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary



judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was



based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 131 S. Ct. at 786-87).  Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review.  Harrington, 131 S. Ct. at 785.  Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning.  See id. at 784 (finding that "[t]here



is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.   Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them.



Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules.  Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991).  For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.

### D.    Summary Judgment Motion

#### 1.    Procedural Default

The respondent raises no arguments of procedural default in regard to the grounds for relief asserted in Laws's Petition.  (ECF No. 26 at 8.)  However, the respondent asserts that the ineffective assistance of trial counsel claim that Laws seeks to add to Ground Three in his motion to amend is procedurally defaulted.  (ECF No. 47 at 2-4.)  In addition to the "illegal identification process" challenged in Ground Three of the Petition, Laws's motion to amend asserts that trial counsel was ineffective for failing to call witnesses during an *in camera* hearing to determine the admissibility of an in-court identification.  (ECF No. 42 at 14.)  Laws's further alleges a claim of ineffective assistance of PCR counsel for failing to question trial counsel at the PCR hearing as to why witnesses were not called at the pretrial *in camera* hearing.  (Id.)

The respondent argues that the proposed ineffective assistance of trial counsel claim raised in the motion to amend is procedurally defaulted because it was not presented in state collateral proceedings, was not addressed by the PCR court's order of dismissal, and was not presented to the South Carolina Court of Appeals on certiorari.  (ECF No. 47 at 2-4.)  In his reply to the respondent's response in opposition to the motion to amend, Laws appears to assert that the ineffective assistance



of trial counsel claim he seeks to add was included in the "unduly suggestive identification procedure claim" raised in his amendment to his PCR application. (ECF No. 55 at 2.) Laws specifically highlights the third paragraph "on page 13, Issue C," of the amendment to his PCR application which notes that "no in-camera testimony was taken from Officer David Stanley, or the clerk, Matthew Fortin in regard to this in-camera identification of the Applicant to pre-establish the parameters of the Neil v. Biggers, test would be met prior to the allowed in-court identification." (Id.; see also ECF No. 26-9 at 15.) However, a review of Laws's amendment to his PCR application reflects that his claims in "Issue C" are solely in reference to ineffective assistance of appellate counsel.[5] (ECF No. 26-9 at 6, 15.) Therefore, as argued by the respondent, Laws's claim that trial counsel was ineffective for failing to call witnesses during a pretrial hearing to determine the admissibility of in-court identification was not presented in state collateral proceedings.

Moreover, a review of the record reflects that the PCR court's order of dismissal addressed Laws's claim that appellate counsel "should have briefed the issue surrounding the identification by the victim." (App. at 420, ECF No. 26-5 at 74.) However, the PCR court's order does not address any claim associated with Laws's in-court identification by the victim in the portion of the order discussing ineffective assistance of trial counsel. (App. at 416-19, ECF No. 26-5 at 70-73.) Thus,

---

[5] The court notes that, where Laws intended to assert a claim of ineffective assistance against both appellate and trial counsel in the amendment to his PCR application, he clearly did so. (ECF No. 26-9 at 6, 12.)



this issue was not preserved for review by the South Carolina Court of Appeals on certiorari.[6] Accordingly, the court concludes that the ineffective assistance of trial counsel claim Laws seeks to add to Ground Three is procedurally barred. See Coleman, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); Picard v. Connor, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding"). Further, this Ground would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules if Laws attempted to raise it now. See Lawrence, 517 F.3d at 714; Longworth, 377 F.3d 437; see also Coleman, 501 U.S. 722.

In Laws's reply to the respondent's response in opposition to the motion to amend, Laws argues that his procedural default of the claim he seeks to add to Ground Three should be excused pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012). (ECF No. 55 at 3.) Generally, any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of his claims. See Coleman, 501 U.S. at 752. However, in Martinez the United States Supreme Court established a "limited qualification" to the rule in Coleman. Martinez, 132 S. Ct. at 1319. The Martinez Court held that inadequate assistance of counsel "at initial-review collateral review

---

[6] There is no indication in the record that Laws filed a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on this allegation. Therefore, even if this ground was raised in the PCR action, it would not have been preserved for appellate review under state procedural rules. See Humbert v. State, 548 S.E.2d 862, 866 (S.C. 2001) (holding that an issue muse be raised to and ruled on by the PCR court to be preserved for appellate review); Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007) ("Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review.").



proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315. In describing its holding in Martinez, the Supreme Court has recently stated that

> [w]e . . . read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013) (citing Martinez, 132 S. Ct. at 1318-19, 1320-21);

see also Sexton v. Cozner, 679 F.3d 1150, 1159 (9th Cir. 2012) (summarizing the Martinez test to

require the following:  "a reviewing court must determine whether the petitioner's attorney in the

first collateral proceeding was ineffective . . ., whether the petitioner's claim of ineffective assistance

of trial counsel is substantial, and whether there is prejudice").

Further, to excuse the procedural default of Laws's proposed ineffective assistance of trial

counsel claim, he must "show that [PCR] counsel's representation during the post-conviction

proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability

that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the

state post-conviction matter." Sexton, 679 F.3d at 1157; see also Williams, 529 U.S. at 391 (stating

that "the Strickland test provides sufficient guidance for resolving virtually all ineffective

assistance-of-counsel claims"); Strickland v. Washington, 466 U.S. 668, 687 (1984) (stating to

demonstrate ineffective assistance of counsel, a petitioner must show that (1) his counsel was

deficient in his representation, i.e. that counsel's errors were so serious that his performance was

below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) he was prejudiced as a result).

Applying <u>Martinez</u> to the record and Laws's arguments, the court concludes that he cannot satisfy <u>Martinez</u>'s limited exception. The record in this case reflects that trial counsel unsuccessfully moved to suppress any in-court identification in a pretrial hearing and objected to the identification of Laws by the eye witness during the trial. (App. at 65-68, ECF No. 26-1 at 67-70; App. at 102, ECF No. 26-2 at 104.) The record further shows that Laws's identification as the perpetrator of the crime was established by other evidence presented at trial to include Laws's statement admitting guilt[7] (App. at 238-39, ECF No. 26-3 at 46-47) and a video recording of the crime which was published to the jury (App. at 100, ECF No. 26-2 at 12).

With regard to PCR counsel, the PCR hearing transcript demonstrates that PCR counsel highlighted each of the claims raised in Laws's amendment to his application for post-conviction relief, to include the claim that appellate counsel was ineffective for failing to present the identification issue in the <u>Anders</u> brief. (App. at 378, 388-91, ECF No. 26-5 at 32, 42-45.) PCR counsel further noted that only two issues involved trial counsel: (1) whether it was proper for trial counsel to allow Laws to be impeached by a prior larceny charge; and (2) whether trial counsel erred in misadvising Laws with respect to a plea offer. (App. at 398-399, ECF No. 26-5 at 52-53.) PCR counsel questioned trial counsel about each of the two identified claims against him. (<u>Id.</u>) This court further notes that, on cross-examination of Laws, the Assistant Attorney General asked: "Now, also, with regard to [trial counsel], is there anything that he, specifically, either failed to do for you, or did not do effectively? It seems most of your argument has been about appellate counsel." (App. at 397,

---

[7] The court notes that Laws contests the trial court's admission of this statement in Ground Two.



ECF No. 26-5 at 51.) Laws answered, "Yes ma'am. That's correct." (Id.) When asked if there was anything else about trial counsel that he wished to relate, Laws testified, "No, ma'am." (Id.) Therefore, the court finds that Laws cannot demonstrate that this is a substantial claim of ineffective assistance of trial counsel and cannot demonstrate that he was prejudiced by trial counsel's failure to present witnesses at the pretrial suppression hearing. The court further finds that Laws cannot demonstrate PCR counsel was objectively unreasonable in failing to raise this claim; and that, but for PCR counsel's errors, there is a reasonable probability that Laws would have received relief on his claim of ineffective assistance of trial counsel.

Because Laws cannot demonstrate that his ineffective assistance of trial counsel claim is substantial and that PCR counsel was ineffective under Strickland in failing to raise it, he cannot establish cause under Martinez excusing the procedural default of this claim. Accordingly, Laws's proposed addition of an ineffective assistance of trial counsel claim associated with trial counsel's failure to call witnesses at a pretrial suppression hearing is procedurally barred. As Law's attempt to amend the Petition to add the ineffective assistance of trial counsel claim is futile, the court finds that portion of the motion should be denied. (ECF No. 42.)

      **2.    Ground One**

In Ground One, Laws alleges that trial counsel was ineffective for advising Laws "not to accept the plea that was offered knowing my case was not a good trial case." (ECF No. 1 at 5.) A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland, that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Strickland, 466 U.S. at 687; see also Williams, 529 U.S. at 391 (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").



To satisfy the first prong of <u>Strickland</u>, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution.  With regard to the second prong of <u>Strickland</u>, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984).  The negotiation of a plea constitutes a critical stage of criminal proceedings, and "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1405, 1408 (2012).

The Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d)." <u>Harrington</u>, 131 S. Ct. at 788.  The Court observed that while "'[s]urmounting <u>Strickland</u>'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult." <u>Id.</u> (quoting <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010)).  The Court instructed that the standards created under <u>Strickland</u> and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Id.</u> (citations omitted).  Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable.  The question is

whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u>

Although the Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals. <u>See</u>, <u>e.g.</u>, <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court). Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the <u>Strickland</u> test in determining that no Sixth Amendment violation occurred.

As noted by the PCR court, Laws was indicted at the September 2005 term of the Pickens County Grand jury for armed robbery and was represented by John W. DeJong when the case was called to trial. (App. at 414-15, ECF No. 26-5 at 68-69.) Laws was found guilty and sentenced on November 16, 2005, to life imprisonment without parole. (App. at 415, ECF No. 26-5 at 69.) The PCR court summarized Laws's testimony at the PCR hearing, during which he testified that "the State made a plea offer for a ten (10) year recommendation," which was valid for only one day. (App. at 417, ECF No. 26-5 at 71; <u>see also</u> App. at 392-93; ECF No. 26-5 at 46-47.) Laws testified that DeJong said the decision was in Laws's hands and DeJong could not make the decision for him. (App. at 393-94, ECF No. 26-5 at 47-48.) Laws admitted to discussing the evidence against him to include a statement, signed by Laws, admitting guilt. (App. at 393, ECF No. 26-5 at 47.) On cross-examination, Laws testified that DeJong should have better explained the risks involved in turning down the plea offer. (App. at 396-97, ECF No. 26-5 at 50-51.)



The PCR court also summarized DeJong's testimony at the PCR hearing, during which he testified that he recalled lengthy negotiations with the solicitor and drug enforcement officers in October of 2005.  (App. at 399-400, 417, ECF No. 26-5 at 53-54, 71.)  DeJong further recalled trying "to get an offer to come down from armed robbery to common law-strong armed robbery in exchange for this information."  (App. at 400, ECF No. 26-5 at 54; see also App. at 417-18, ECF No. 26-5 at 71-72.)  However, DeJong testified that he did not recall the state making a ten-year plea offer.  (Id.)  DeJong stated that "[o]ne reason it sticks in my mind that an offer was not made" was the fact that he requested a plea agreement but could not "hammer that out."  (App. at 402, ECF No. 26-5 at 56.)  DeJong further recalled receiving a letter from the solicitor on October 19, 2005, indicating that there would be no plea offer in Laws's case.  (App. at 399, ECF No. 26-5 at 53.)  DeJong testified that, had such an offer been made, he would have considered it generous and advised Laws to "think long and hard about" it.  (App. at 418, ECF No. 26-5 at 72; see also App. at 401-02, ECF No. 26-5 at 55-56.)  DeJong further stated that he would never "force a client to take an offer."  (App. at 419, ECF No. 26-5 at 73; see also App. at 402, ECF No. 26-5 at 56.)

In denying and dismissing Laws's application, the PCR court found DeJong's testimony to be credible and Laws's testimony not to be credible.  (App. at 418, ECF No. 26-5 at 72.)  In his response in opposition to the respondent's motion, Laws argues that the PCR court "denied this issue on the ground of credibility and because no evidence was submitted."  (ECF No. 42 at 4.)  Laws asserts that he can now provide "objective evidence supporting petitioner's credibility" and cites to an order revoking his bond and discussing information gathered from Laws in a meeting with law enforcement on October 10, 2005.  (Id.; see also ECF No. 43-1 at 1.)  Laws reasserts that the ten-year plea offer occurred during that meeting and that DeJong did not receive notice from the solicitor that no plea offer would be made in the case until nine days later on October 19, 2005.  (Id.; see also ECF

No. 43-1 at 2.)  However, as reasonably found by the PCR court, "there is no mention in the trial transcript of a plea offer in this case" and Laws "failed to produce any documentation to corroborate his assertion that the State conveyed a ten (10) year offer that was valid for a single day." (App. at 419, ECF No. 26-5 at 73.)  The order revoking bond, provided by Laws in response to the respondent's motion, likewise fails to reference any plea offer. (ECF No. 43-1 at 2.)  Therefore, Laws has not clearly shown that the credibility determination in the PCR court's order is without support.  See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

The PCR court reasonably found that Laws "failed to meet his burden of proving trial counsel should have better explained the ramifications of rejecting a ten (10) year plea offer." (App. at 418, ECF No. 26-5 at 72.)  Further, assuming such an offer was made, the PCR court reasonably determined that Laws's own testimony reflected that it was conveyed to, and discussed with him by DeJong.  See Frye, 132 S. Ct. at 1408.  Thus, "if a plea offer was made in his case, it was properly relayed to the Applicant.  Cf. Davie v. State, 381 S.C. 601, 375 S.E.2d 416 (2009) (holding counsel's failure to convey the State's plea offer to defendant constituted deficient performance)." (App. at 419, ECF No. 26-5 at 73.)  Moreover, the PCR court reasonably concluded that Laws "failed to prove the first prong of the Strickland test—that trial counsel failed to render reasonably effective assistance under prevailing professional norms" and "failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation" of Laws.  (Id.)  The PCR court also reasonably held that Laws "failed to prove the second prong of Strickland—that

he was prejudiced by trial counsel's performance" and "has not met his burden of proving trial counsel failed to render reasonably effective assistance." (Id.)

Upon thorough review of the parties' briefs and the record in this matter, the court finds the PCR court's analysis to be reasonable and concludes that Laws cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the Harrington court, "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785.

In response to the respondent's motion for summary judgment, Laws restates his assertion that DeJong was ineffective for advising Laws "that the decision to plea or not was solely in petitioner's hands" and for failing "in his duty to inform petitioner of risks involved by pursuing trial." (ECF No. 42 at 5.) However, Laws provides no additional factual allegations or arguments to refute the respondent's motion for summary judgment on this claim. Upon careful review of the transcripts and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Laws has failed to establish that plea counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. Therefore, Laws has not shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Harrington, 131 S. Ct. at 785. Accordingly, the respondent's motion for summary judgment should be granted as to Ground One.

### 3.    Ground Two

In Ground Two, Laws maintains that officers conducting an interrogation violated <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), by "not stopping questioning after 6 hours and by my refusal and request for burger." (ECF No. 1 at 6-7.) Laws raised this issue in his direct appeal by asserting that the trial judge erred in finding Laws's statement admissible "where the state failed to demonstrate by a preponderance of the evidence that appellant voluntarily waived his <u>Miranda</u> rights." (App. at 350, ECF No. 26-5 at 4.) For the reasons that follow, the court finds that the trial court's decision did not unreasonably misapply clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

Following jury selection in Laws's case, the trial judge conducted a hearing pursuant to <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), to determine the admissibility of Laws's statement. Charles Brett Barwick, a detective with the Pickens County Sheriff's Office, testified that Laws was arrested at approximately three-thirty on the afternoon of June 23, 2005. (App. at 30, ECF No. 26-1 at 32.) Barwick testified that Laws arrived at the law enforcement center around four o'clock in the afternoon and was taken down to the detective division at approximately six o'clock that evening. (App. at 31, ECF No. 26-1 at 33.) Barwick stated that Laws requested privacy and was taken to an office with standard fluorescent lighting, but no windows. (App. at 24, ECF No. 26-1 26-1 at 26.) Barwick estimated the office to be twenty by twenty-five square feet with a desk and several chairs. (<u>Id.</u>) Barwick testified that he, Laws, and another detective—Fowler—were present for the entire interview, with the exception of brief restroom breaks. (App. at 25, ECF No. 26-1 at 27.) Barwick stated that he advised Laws of his <u>Miranda</u> rights by reading the <u>Miranda</u> warnings "verbatim off the advisement sheet" at approximately 6:15 p.m. (App. at 29, 32, ECF No. 26-1 at 31, 34.) Barwick testified that Laws was advised of the nature of the interview, did not appear to have any trouble



understanding his <u>Miranda</u> rights, and could speak English, read, and write. (App. at 28-29, ECF No. 26-1 at 30-31.) Barwick testified that Laws's answers and responses to the <u>Miranda</u> warnings were articulate and that Laws's verbiage and speech indicated that he was of above-average intelligence. (App. at 25-26, ECF No. 26-1 at 27-28.)

Barwick testified that the actual written statement started around eight o'clock that evening and explained that for the two-hour period of time between being given his <u>Miranda</u> warnings and beginning the written statement, Laws and Barwick talked about several other matters. (App. at 32, ECF No. 26-1 at 34.) Barwick stated that Laws was not emotional, but appeared reserved at the beginning of the interview, opening up more as the interview progressed. (App. at 26, ECF No. 26-1 at 28.) Barwick testified that Laws was seated during the interview, but one hand remained handcuffed and Laws's belly-chains were not removed. (App. at 36, ECF No. 26-1 at 38.) Barwick testified that Laws admitted to using drugs previously and some time before his arrest, but Barwick was unsure of the time of such drug use. (App. at 32, ECF No. 26-1 at 34.) Barwick testified that Laws did not appear to be on drugs at the time of the interview and never dozed off or put his head down to Barwick's recollection. (App. at 32-33, ECF No. 26-1 at 34-35.) Barwick had no memory of anyone suggesting that the interview be called off, but testified that it was standard procedure to stop an interview if someone was not up to speaking. (App. at 33, ECF No. 26-1 at 35.) Barwick testified that the interview ended at approximately ten o'clock that night and that Laws was provided drinks and cigarette breaks. (<u>Id.</u>) Barwick stated that Laws was provided food after the interview, because the officers did not have access to food until that time. (App. at 33-34, ECF No. 35-36.) Barwick did not recall whether Laws requested a restroom break, but testified that he would have been allowed such a break if needed. (App. at 34, ECF No. 26-1 at 36.) Barwick testified that Laws was not threatened or coerced by anyone during the interview, was not promised anything in return

PJG

for cooperating, waived his right to counsel, and never asked for an attorney during the interview. (App. at 26-27, ECF No. 26-1 at 28-29.) Barwick testified that, he makes no "promises or anything of that nature," but when "people ask for help with their bond" he tells "them all the same thing, that I can't help them or guarantee them anything, but I will speak with the Judge or advise him of their cooperation or things of that nature." (App. at 34-35, ECF No. 26-1 at 36-37.) Barwick testified that there was a distinct possibility that he told Laws prior to the interview that Barwick would "relay to the Judge if [Laws] cooperated," but that "it would bear no weight on his bond" because that issue "would be up to the magistrate." (App. at 35, ECF No. 26-1 at 37.) Barwick testified that Laws did not exhibit any impairments during the four-hour period that would affect his understanding and that, to the best of Barwick's knowledge, Laws's statement was freely and voluntarily given. (App. at 27-29, ECF No. 26-1 at 29-31.)

Testimony was also taken from Detective Ket Fowler, who testified that he was present for Laws's questioning and recalled that the "majority of that four-hour period was just conversation, relaxed conversation." (App. at 38-39, ECF No. 26-1 at 40-41.) Fowler testified that Laws did not appear to be under the influence of alcohol or any other type of substance and that Fowler never suggested to Barwick that the interview be terminated or rescheduled for another time. (App. at 39, ECF No. 26-1 at 41.) Fowler recalled Laws requesting drinks and testified that he was provided two or thee cups of water. (App. at 39-40, ECF No. 26-1 at 41-42.)

Laws testified that he frequently used a drug known as "ice" and had used this drug approximately ten minutes prior his arrest. (App. at 43, ECF No. 26-1 at 45.) Laws testified that the drug "over-amps your system," and causes severe dehydration and hallucinations. (App. at 43-44, ECF No. 26-1 at 45-46.) Laws testified that he had not slept for "28 to 30 days" prior to his arrest due to his drug use, was severely dehydrated when he arrived at the law enforcement center,



and could "hardly speak." (App. at 44, ECF No. 26-1 at 46.) Laws testified that, other than being provided water, a cigarette prior to the interview, and food after the interview, he had little recollection of what happened between the time the <u>Miranda</u> form was signed at 6:15 p.m. and the time he began his statement around 8:00 p.m. (App. at 44-47, 52-53, ECF No. 26-1 at 46-49, 54-55.) Laws stated that there were no breaks during the interview and he could not recall if he asked to use the restroom or asked for the interview to cease. (App. at 53, ECF No. 26-1 at 55.) Laws stated that he did ask for food during the interview and was told that he could eat when finished. (App. at 50, ECF No. 26-1 at 52.) Laws stated that he remained handcuffed during the interview, "was extremely intoxicated" from the drug use, and may have fallen asleep. (App. at 47, ECF No. 26-1 at 49.) Laws testified that he distinctly recalled Fowler asking Barwick if he wanted to stop or delay the interview due to Laws being tired. (App. at 47, 54-55, ECF No. 26-1 at 49, 56-57.)

While Laws stated that he did not recall Barwick or Fowler going over the <u>Miranda</u> warnings, Laws testified that he recognized the form and admitted that it appeared to contain his signature. (App. at 45-46, 52, ECF No. 26-1 at 47-48, 54.) Laws also admitted that the statement appeared to be written in his handwriting, but testified that he cannot read without glasses and that he did not have his glasses when he wrote the statement. (App. at 47, 55-56, ECF No. 26-1 at 49, 57-58.) Laws testified that, after completing part of the statement he handed it to Barwick, who indicated that Laws needed to write more and gave him instructions on what to write. (App. at 48, ECF No. 26-1 at 50.) Laws further testified that he told Barwick at one point that he did not want to continue the statement but Laws could not recall if he requested an attorney. (App. at 53, ECF No. 26-1 at 55.) Laws testified that Barwick indicated that Laws needed to give the statement and promised Laws a reasonable bond. (App. at 54, ECF No. 26-1 at 56.) Laws stated that he did not want to sign the statement and Barwick said he would help with the charge, talk with the judge to get Laws a

bond, and that Laws could "possibly work these charges off" by helping law enforcement with other things.  (App. at 49, ECF No. 26-1 at 51.)   Laws testified that both Barwick and Fowler "guaranteed" to help him.  (App. at 55, ECF No. 26-1 at 57.)  Laws said he was provided food after the interview, was booked into the jail at 11:43 p.m., and given a mattress where he went to sleep. (App. at 50, ECF No. 26-1 at 52.)  In response to questions about his educational background, Laws testified that he had earned his general equivalency degree and taken correspondence courses from Arizona State University to earn an Associates Degree in Theology.  (App. at 51, ECF No. 26-1 at 53.)  Laws further testified that he has previously been employed at a sandwich company and that he had a prior conviction.  (Id.)

Laws's mother, Rosie Ellen Newton, also provided testimony indicating that she received a call from Barwick on June 24, 2005.  (App. at 58, ECF No. 26-1 at 60.)  Newton testified that Barwick stated he had talked to Laws, "who was going to help them with some stuff so that he wouldn't be charged with as many things as they had charges for." (Id.) Newton stated that Barwick said Laws had been very helpful to law enforcement, providing information that would help in other open cases.  (App. at 59, ECF No. 26-1 at 61.)  Newton said Barwick indicated that he could not promise Laws "to be out of jail, but that [Barwick] could talk to the Judges and to the district attorney and make things easier."  (Id.)  Newton testified that Barwick did not say that he could promise Laws a bond.  (App. at 60, ECF No. 26-1 at 62.)

In denying Laws's motion at the conclusion of the Jackson v. Denno hearing, the trial judge held:

> The burden on the State, at this time, is to show by the preponderance of the evidence and under the totality of the circumstances that the statement was voluntarily made.  I have to find, based on what I've heard, that the statement was not the result of any coercive police tactics.



> I find that [Laws] was properly advised of all his Constitutional rights under Miranda. And, as I said, under the totality of the circumstances, including his background, experience, and his education that the statement was freely and voluntarily made.
>
> It seems to me that—just my observation is that Mr. Laws has selective memory. But in any event, your motion is denied. The voluntariness of the statement will be an issue for the jury.

(App. at 65, ECF No. 26-1 at 67.) The South Carolina Court of Appeals dismissed Laws's appeal raising this issue following <u>Anders</u> review; the appellate court mentioned the claims presented on appeal but did not otherwise discuss any of the claims in its opinion. (App. at 359-60, ECF No. 26-1 at 13-14.)

In response to the respondent's motion for summary judgment, Laws highlights testimony given during the hearing, asserts that his interview was not "standard police procedure," and reasserts his claim that the trial court erred in denying the motion to suppress the statement. (ECF No. 42 at 7-8.) Laws continues to argue that his confession was not voluntarily given, and further complains that he was not immediately taken before a magistrate judge upon his arrest. (<u>Id.</u> at 9-12.)

"It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Furthermore, "in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.' " <u>Barbe v. McBride</u>, 521 F.3d 443, 452 (4th Cir. 2008) (quoting <u>Burket v. Angelone</u>, 208 F.3d 172, 186 (4th Cir. 2000)). Upon review of all of the filings in this matter and the record before the court, the court finds that Laws cannot demonstrate that the state trial court and appellate court misapplied federal law, or that the alleged evidentiary error, if one even exists, was so extreme as to deny Laws a constitutionally fair proceeding. As Laws cannot satisfy the standard in <u>Barbe</u>, he is not entitled to habeas relief on



this ground.  Therefore, the respondent's motion for summary judgment should be granted as to Ground Two.

### 4.    Ground Three

In Ground Three, Laws asserts that the trial court erred by failing to suppress an in-court identification of him where such identification was tainted by an "[i]llegal identification process" whereby an officer showed a single picture of Laws to the victim, telling the victim Laws's name and indicating that Laws perpetrated the crime.  (ECF No. 1 at 8.)  Laws raised this issue as "Question C" in his "45 Day Pro Se Brief."  (ECF No. 26-7 at 6.)  For the reasons that follow, the court finds that the trial court's decision did not unreasonably misapply clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

Following the Jackson v. Denno hearing discussed above, trial counsel moved to suppress the in-court identification of Laws by the convenience store clerk working at the time the armed robbery occurred.  Trial counsel argued that, shortly after the armed robbery occurred, one law enforcement officer asked another to bring a picture of Laws to the crime scene.  (App. at 66, ECF No. 26-1 at 68.)  Trial counsel asserted that law enforcement did not obtain a description of the armed robbery suspect from the clerk who witnessed the incident prior to presenting the photograph, and that the clerk identified Laws without any photo lineup ever being conducted.  (Id.)  Trial counsel conceded that a video recording of the armed robbery existed; however, trial counsel maintained that the clerk was shown the photograph of Laws prior to viewing any such video.  (Id.)  Trial counsel argued that any in-court identification was tainted by the officers' action of showing the clerk, who had never seen the suspect prior to the night of the robbery, a photograph of Laws.



(Id.)  Thus, trial counsel moved for the suppression of in-court identification.  (App. at 66-67, ECF No. 26-1 at 68-69.)

The solicitor asserted that testimony from the clerk would show that he had over five minutes to observe Laws in the store, and that law enforcement "simply showed [the clerk] the photograph and asked him if he recognized anyone in that photograph."  (App. at 67, ECF No. 26-1 at 69.)  The solicitor further indicated that the clerk would testify that he paid particular attention to Laws due to his suspicious actions, and that the two conversed twice on the date of the robbery.  (App. at 68, ECF No. 26-1 at 70.)  The solicitor stated that Deputy Stanley, who presented the photograph to the clerk, would testify that he showed the clerk a photograph containing two individuals and the clerk responded, "that's the guy that just robbed me."  (App. at 67, ECF No. 26-1 at 69.)  Therefore, the solicitor argued that, under the totality of the circumstances, the in-court identification should be allowed.  (App. at 68, ECF No. 26-1 at 70.)

The trial court summarily denied the motion to suppress the in-court identification.  (App. at 68, ECF No. 26-1 at 70.)  While the state did not proffer any live testimony at the *in camera* hearing, counsel was able to cross-examine both the clerk and Stanley before the jury and their testimony supported the representations made by the solicitor to the trial judge.  The clerk, Matthew Scott Fortin, testified that a Caucasian man came into the store around 2:00 a.m. on June 23, 2005, and asked a question about phone cards.  (App. at 85, 87, ECF No. 26-1 at 87, 89.)  Fortin testified that the man began looking around and appeared to be "jumpy."  (App. at 88, ECF No. 26-1 at 90.)  Another customer was in the store at that time but left after about three minutes.  (App. at 87, ECF No. 26-1 at 89.)  Fortin stated that the white man approached the counter with merchandise, which included beer.  (App. at 85-86, ECF No. 26-1 at 87-88.)  When Fortin asked the man for identification to purchase the beer, he pulled out a pistol.  (App. at 86, ECF No. 26-1 at 88.)  Fortin,



who testified that he was approximately two feet away from the man, stated that he did not believe the weapon was real and the man broke the gun down to show Fortin a bullet inside the pistol's chamber. (App. at 92-93, ECF No. 26-2 at 4-5.) Fortin testified that he finished ringing up the man's merchandise, totaled out the order and backed away from the opened register at which time the man reached over the counter and removed money from the register. (App. at 94-95, ECF No. 26-2 at 6-7.) Fortin testified that the man then left the store and Fortin called law enforcement. (App. at 95-96, ECF No. 26-2 at 7-8.) Fortin stated that the man was in the store for about five minutes. (App. at 90-91, ECF No. 26-2 at 2-3.) Fortin testified that an officer appeared on the scene approximately two minutes after the robbery and Fortin told the officer that the suspect was around six feet three inches tall and was wearing a hat. (App. at 98, ECF No. 26-2 at 10.) Fortin did not recall any other details about the man's appearance. (App. at 98-99, ECF No. 26-1 at 10-11.) Fortin's identification of Laws was then admitted over counsel's objection. (App. at 102-03, ECF No. 26-2 at 14-15.) A video recording of the robbery was published to the jury during the Fortin's testimony. (App. at 100, ECF No. 26-2 at 12.)

Officer David Edward Stanley testified that he was the first law enforcement officer at the scene of the robbery and asked Fortin for a description of the suspect. (App. at 156, 159, ECF No. 26-2 at 68,71.) Stanley testified that Fortin described the suspect as a slender white male, approximately six feet, three inches tall, wearing shorts and a hat. (App. at 160, ECF No. 26-2 at 72.) Fortin did not know the suspect's hair or eye color. (Id.) Stanley testified that, at his suggestion, another officer brought a photograph of Laws and two other individuals to the scene. (App. at 174, ECF No. 86.) Stanley presented the picture to Fortin and asked whether he saw the suspect in the photograph. (Id.) Stanley testified that Fortin identified Laws as the individual who had robbed the store. (App. at 175, ECF No. 26-2 at 87.)



An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created "a very substantial likelihood of irreparable misidentification." See Manson v. Brathwaite, 432 U.S. 98, 116 (1977) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968). In Neil v. Biggers, 409 U.S. 188 (1972), the United States Supreme Court held that the Due Process Clause requires the exclusion at trial of evidence of a pre-trial identification of a person if, based on the totality of the circumstances, the procedure used to obtain the identification was *both* (1) unnecessarily suggestive and (2) conducive to mistaken identification. Id. at 199-200. The Court further held that in determining the reliability of an identification, a court is to consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and confrontation. Id.

In his response in opposition to the respondent's motion for summary judgment, Laws restates his contention that the out-of-court identification was "so suggestive as to render 'a very substantial likelihood of irreparable misidentification.' " (ECF No. 42 at 14.) Laws alleges that Fortin's testimony reflects that his attention was on cleaning and helping another customer for much of the time that the white male suspect was in the store. (Id. at 17-18.) Laws further alleges that the solicitor's assertion that the Fortin identified Laws from a photograph without law enforcement direction is false based on Stanley's testimony that he directed Fortin to state whether he saw the suspect in the photograph. (Id. at 19.) Thus, Laws asserts that the totality of the circumstances do not support the trial court's decision to admit the identification evidence, which Laws claims caused substantial prejudice and had an injurious effect on the jury's verdict. (Id. at 23-24.)

While the trial court did not directly reference the <u>Biggers</u> factors in denying Laws's motion to suppress in-court identification, the solicitor's proffer of what testimony from Fortin and Stanley would show addressed such factors. This court finds that the record reflects sufficient evidence that the trial court considered the <u>Biggers</u> factors in determining that the identification evidence was reliable under the totality of the circumstances. In dismissing Laws's appeal, the state Court of Appeals reviewed the "record, counsel's brief, and Laws' <u>pro se</u> brief pursuant to <u>Anders</u>," and found no error.

Further, as previously discussed, the jury was presented other evidence to establish Laws's identify as the person who robbed the convenience store. Such evidence includes Laws's written statement admitting guilt and the video recording of the robbery. Therefore, based on the record as a whole, Laws cannot show that the in-court identification had a "substantial and injurious effect or influence" on the jury's verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993) ("[T]he standard for determining whether habeas relief must be granted is whether the [] error 'had substantial and injurious effect or influence in determining the jury's verdict.' ") (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)). Thus, even if this court were to find that the trial judge erred in admitting the identification testimony, such error was harmless. <u>See</u> <u>Fowler v. Joyner</u>, 753 F.3d 446, 459 (4th Cir. 2014) (concluding that, after applying the <u>Brecht</u> standard, an "in-court identification, even if error, was harmless" because "there was abundant other evidence presented on the issue of [the petitioner's] guilt"). Accordingly, the respondent's motion should be granted as to Ground Three.

**5.    Ground Four**

In Ground Four, Laws alleges an illegal search and seizure "process without a warrant or plain sight reasoning and use of ambiguous consent form." (ECF No. 1 at 10.) Laws's motion to



amend and response in opposition to the respondent's motion for summary judgment indicates that he wishes to "willingly drop the search and seizure Ground Four." (ECF No. 42 at 26.) The respondent does not oppose Laws's decision to abandon his Ground Four claim (ECF No. 47 at 1) and additionally argues in its motion for summary judgment that such a claim does not state a cognizable ground for habeas relief (ECF No. 25 at 49-51).

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Stone v Powell, 428 U.S. 465, 494-95 (1976); see also Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir. 1982) ("Stone v. Powell [] marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner has the opportunity to litigate those claims in state court."). Laws's response in opposition to the respondent's motion for summary judgment fails to refute the respondent's contention that he had a full and fair opportunity to litigate this issue in state court as Laws challenged the seizure prior to trial and on direct appeal. (ECF No. 26 at 51; ECF No. 42 at 6; see also App. at 69, ECF No. 26-1 at 71.) Hence, Laws has not shown that he did not have a full and fair opportunity to litigate the issue presented in Ground Four in state court. Accordingly, while the court concludes that Laws's motion to abandon his claim in Ground Four should be granted (ECF No. 42), the respondent would be entitled to summary judgment on this claim in any event.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary

judgment (ECF No. 27) be granted and Laws's Petition denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 19, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).